UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARCELLOUS SANTA BENNETT,

               Plaintiff,

v.

JAMES SCHIEBNER et al.,

               Defendants.
_____/

Case No. 1:23-cv-734

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following MCF officials: Warden James Schiebner and Deputy Warden Jeanine Winger. (Compl., ECF No. 1, PageID.1, 2.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.1.)

In Plaintiff's complaint, he alleges that on April 23, 2023, he "was leaving the chow hall between 4:45 p.m. and 5:00 p.m. through the exterior door entrance that was under construction

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

towards the school building." (*Id.*, PageID.3.)[2] Plaintiff states that as he was leaving, "the metal door jam[b] stopper fell off and hit Plaintiff in the head." (*Id.*) As Plaintiff was walking back to his housing unit, he "began to suffer from severe traumatic head pain, neck pain, back pain, and [his] vision began to blur[] going in and out." (*Id.*) Upon Plaintiff's arrival at his housing unit, he notified non-party correctional officer Shilander about the incident and his injuries, and Shilander "immediately called healthcare." (*Id.*)

Thereafter, Plaintiff was seen by non-party nurse Jane Doe. (*Id.*, PageID.4.) Plaintiff told the nurse about the incident and his related injuries. (*Id.*) The nurse "told Plaintiff don't tell nobody," and she told Plaintiff to return to his cell "and lay down." (*Id.*) The nurse provided Plaintiff with ice and acetaminophen, and she advised Plaintiff that he would be scheduled for a follow-up appointment the following day. (*Id.*)

Thereafter, Plaintiff filed a grievance about the incident, explaining that "the metal door jam[b] stopper that was supposed to be screwed had missing screws and fell off and hit [him] in the head." (*Id.*) The next day, April 24, 2023, Plaintiff had a follow-up appointment with non-party nurse Rhondo. (*Id.*) Plaintiff described the incident and his injuries to nurse Rhondo. (*Id.*, PageID.5.) Plaintiff states that nurse Rhondo "told Plaintiff there [was] nothing wrong with [him]," explaining that Plaintiff was "experiencing what somebody would experience if they scrap[ed] their knee" and that Plaintiff would "be okay in a couple days." (*Id.*) Plaintiff further states that nurse Rhondo did not order an x-ray and did not refer Plaintiff to a doctor. (*Id.*)

Subsequently, Plaintiff returned to his housing unit and filed a grievance regarding nurse Rhondo's medical care. (*Id.*) Plaintiff also submitted a healthcare kite describing his injuries. (*Id.*) The following day, April 25, 2023, Plaintiff was called to healthcare for an appointment, and he

---

[2] The Court corrects the capitalization in quotations from Plaintiff's complaint.

was seen by non-party nurse Jones. (*Id.*) Plaintiff described the April 23, 2023, incident to nurse Jones, and he described his injuries. (*Id.*) Plaintiff states that nurse Jones told Plaintiff that "there [was] nothing wrong with Plaintiff" and that she was not going to refer him to the doctor or for an x-ray or MRI. (*Id.*) Thereafter, Plaintiff filed a grievance regarding the medical care he received from nurse Jones. (*Id.*, PageID.6.)

On May 1, 2023, Plaintiff submitted another healthcare kite regarding his injuries, and Plaintiff was scheduled for an appointment on May 2, 2023. (*Id.*) Plaintiff states that when he went for his appointment on May 2, 2023, he "was refused medical treatment and was told to leave healthcare." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants Schiebner and Winger violated his rights under the Eighth Amendment, as well as under state law. (*Id.*, PageID.1.) As relief, Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.7.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## A.    Official Capacity Claims

Plaintiff sues Defendants Schiebner and Winger in their official and individual capacities. (Compl., ECF No. 1, PageID.1.)

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S.

6

332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks only monetary damages. (Compl., ECF No. 1, PageID.7.) An official capacity defendant is absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Accordingly, Plaintiff's official capacity claims against Defendants Schiebner and Winger will be dismissed.[3]

**B.      Individual Capacity Claims**

Plaintiff alleges that Defendants Schiebner and Winger violated his Eighth Amendment rights. (Compl., ECF No. 1, PageID.1.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954

---

[3] Even if Plaintiff had sought declaratory or injunctive relief, his official capacity claims would still be subject to dismissal. The Supreme Court has cautioned that, "*Ex parte Young*[, 209 U.S. 123, 159–60 (1908),] can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (citation omitted). Here, Plaintiff seeks relief for a past harm, and he does not allege facts suggesting an ongoing violation of federal law.

(1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

As an initial matter, Plaintiff fails to allege facts showing how Defendants Schiebner and Winger were personally involved in the violations of his constitutional rights. (*See generally* Compl., ECF No. 1.) Indeed, Plaintiff fails to name these Defendants in the "facts" section of his complaint. (*See id.*, PageID.3–6.) Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was

involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff's claims against Defendants Schiebner and Winger, therefore, fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

It appears that Plaintiff seeks to hold Defendants Schiebner and Winger liable for the actions of their subordinates, however, government officials, such as Defendants, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have

interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendants Schiebner and Winger encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that these Defendants were personally involved in the alleged violations of Plaintiff's constitutional rights. Therefore, for the reasons set forth above, Plaintiff's claims against Defendants Schiebner and Winger will be dismissed.

Moreover, even considering the merits of Plaintiff's claim regarding the loose or missing screws in the door, Plaintiff's claim is akin to a slip-and-fall case. "[F]ederal courts have nearly unanimously held that a slip and fall, without more, does not amount to cruel and unusual punishment." *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017) (citation and quotation omitted); *see White v. Tyszkiewicz*, 27 F. App'x 314, 315 (6th Cir. 2001); *Nali v. Michigan Dep't. of Corr.*, No. 2:07-cv-255, 2009 WL 3052227, at *6 (W.D. Mich. Sept. 21, 2009) ("[W]hile an icy prison yard walkway presents the possibility for an inmate to slip and fall, it does not pose a substantial or excessive risk of serious harm."). "[C]ourts have occasionally found that a slip-and-fall case that has additional exacerbating factors can create a plausible allegation of constitutional harm." *Lamb*, 677 F. App'x at 209 (citation omitted). For example, "where the plaintiff was disabled, had to use crutches, and had fallen many times due to slippery conditions in the shower, and prison officials were aware of all of these facts, the plaintiff could potentially state a deliberate-indifference claim." *Id.* (citing *Frost v. Agnos*, 152 F.3d 1124, 1129 (9th Cir. 1998)).

10

Here, Plaintiff alleges that "the exterior door was under construction" and that "the metal door jam[b] stopper . . . was not properly installed and secured." (Compl., ECF No. 1, PageID.6.) Plaintiff alleges no facts about Defendants Schiebner and Winger's knowledge of the construction, let alone any knowledge regarding the installation of the metal door jamb stopper. At most, Plaintiff's allegations suggest that Defendants Schiebner and Winger were negligent because inmates were using a door that was "under construction"; however, an Eighth Amendment violation requires a "state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Therefore, based on the facts alleged in Plaintiff's complaint, Plaintiff has failed to show that Defendants Schiebner and Winger were deliberately indifferent to Plaintiff's health and safety.

Furthermore, with respect to Plaintiff's claims regarding the medical care he received after the incident, Plaintiff alleges no facts to suggest that Defendants Schiebner and Winger had any knowledge of, let alone involvement in, Plaintiff's medical treatment. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, for all of the reasons set forth above, Plaintiff fails to state an Eighth Amendment claim against Defendants Schiebner and Winger, and his Eighth Amendment claims against these Defendants will be dismissed.

### C.    State Law Claims

Plaintiff also alleges that Defendants Schiebner and Winger violated state law. (*See* Compl., ECF No. 1, PageID.1 (stating that "the Court has supplemental jurisdiction over the Plaintiff[']s state law tort claims").)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60

F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law fail to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   August 8, 2023                              /s/ Phillip J. Green
                                                     Phillip J. Green
                                                     United States Magistrate Judge